COMMONWEALTH of Pennsylvania.

v.

**Joseph David SWEITZER Jr., Appellant**

**No. 1044 EDA 2017**

Superior Court of Pennsylvania.

Argued October 10, 2017

Filed December 21, 2017

---

Sameer M. Barkawi, Public Defender, West Chester, for appellant.

Nicholas J. Casenta, Jr, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: OTT, J., STABILE, J., and STEVENS *, P.J.E.

OPINION BY OTT, J.:

Joseph David Sweitzer, Jr., appeals from the judgment of sentence imposed on February 7, 2017, in the Chester County Court of Common Pleas. A jury found Sweitzer guilty of possession of a controlled substance (two counts), possession with intent to deliver (PWID), and possession of drug paraphernalia.[1] The trial court sentenced Sweitzer to an aggregate term of three to seven years' imprisonment. On appeal, Sweitzer challenges (1) the sufficiency of the evidence to sustain his convictions, and (2) the trial court's admission of a photographic image of Sweitzer's Pennsylvania Access card. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm.

The facts underlying Sweitzer's conviction were aptly summarized by the trial court as follows:

On March 28, 2016 at approximately 10:30 p.m., Officer Brian Bolt with the West Nottingham Township Police Department, Chester County, was on stationary patrol in the area of the WAWA parking lot.[2] Officer Bolt observed an unoccupied Dodge minivan

[2] WAWA had previously requested that police officers patrol its parking lot.

parked by the gas pumps. When he checked the minivan's tag through PA CLEAN, the results showed that the tag was registered to a Toyota vehicle; not a Dodge. Subsequently, Officer Bolt observed two male individuals approach the minivan; the first male entered via the driver's door and the second male entered via the front passenger door. The minivan then moved to a parking space. Ten to fifteen minutes later, the minivan exited the WAWA parking lot. Officer Bolt followed the minivan and initiated a traffic stop to investigate the registration discrepancy. After Officer Bolt activated his overhead lights, the minivan continued to travel approximately ¼ mile before pulling over though there was plenty of opportunity for the driver to stop in a safe location immediately. Officer Bolt began his investigation by speaking with the driver and observed [Sweitzer] lying across the rear bench of the minivan screaming in pain (the middle passenger seats of the van had been removed). [Sweitzer] declined Officer Bolt's offer to call an EMS unit to address his medical issue. Officer Bolt then called for back-up and proceeded to further question the driver about the tag discrepancy.

Officer Coverly testified that he responded to Officer Bolt's request for back-up and spoke briefly with Officer Bolt before approaching [Sweitzer]. Officer Bolt requested that Officer Coverly monitor [Sweitzer] while Officer Bolt spoke with the driver. [Sweitzer] indicated to Officer Coverly that he was in pain. Officer Coverly also offered to call for medical assistance and [Sweitzer] again declined. During their conversation, [Sweitzer] volunteered that he may

* Former Justice specially assigned to the Superior Court.

1. 35 P.S. §§ 780–113(a)(16), (a)(30), and (a)(32), respectively.

have an outstanding warrant. It was confirmed that there was a warrant for [Sweitzer's] arrest from Lancaster County and Officer Coverly took [Sweitzer] into custody.

Incident to the arrest, Officer Bolt conducted a search of [Sweitzer's] person. Items taken out of [Sweitzer's] pockets included: batteries [two "Cell Max" batteries, one "Rayovac" battery, and one green "Duracell" battery], debit cards, cash, a driver's license, etc.[3] Those items were laid on the ledge area of the minivan's floor and photographed. [Sweitzer] was then escorted to the patrol car for transport to the station.

[3] Seizure of the items is not at issue in this appeal.

After [Sweitzer] was secured in the patrol car, Officer Coverly searched the area of the van that had been within [Sweitzer's] immediate reach, including a flannel jacket upon which [Sweitzer] had been lying. Officer Coverly lifted the flannel jacket for inspection and found a digital scale box with a razor blade taped to it. Officer Coverly also found a Newport cigarette packet in the crevice between the rear seat and the back of the rear seat. Inside the Newport packet was a tin containing suspected methamphetamine ("meth"). The Commonwealth presented photographs of the rear seat, the flannel jacket, the rectangular digital scale without its box, the Newport packet, and the tin of suspected meth that was hidden in the Newport packet. Upon a later inspection of the minivan[4], Officer Bolt found two more tins further down the crease of the rear seat. One tin contained yellow and white tablets and the other tin contained many small plastic baggies. In between the two front

seats, Officer Bolt found a small black carrying bag containing a number of items including another tin with more small baggies, a metal spoon, and a second digital scale.

[4] The driver of the minivan gave consent to have the minivan searched.

[Sweitzer] was transported to the station for processing. At no time during the transport or the processing did [Sweitzer] complain further about abdominal pain. During [Sweitzer's] processing, he seemed stressed and Officer Coverly offered [Sweitzer] the opportunity to smoke. [Sweitzer] stated he preferred Newport cigarettes to smoke and that he had left an empty Newport packet in the minivan.

Trial Court Opinion, 5/19/2017, at 1–4 (record citations and footnote omitted).

Sweitzer was subsequently charged with two counts of possession of a controlled substance, PWID, possession of drug paraphernalia, and criminal conspiracy. Prior to trial, the Commonwealth withdrew the criminal conspiracy charge. Sweitzer proceeded to a jury trial held on November 15–16, 2016 and Sweitzer was found guilty as stated above. Following sentencing, Sweitzer filed a timely post-sentence motion to modify and reduce sentence. The trial court denied this motion on February 22, 2017, and this timely appealed followed.[2]

Sweitzer presents two questions for our review, as follows:

Was evidence presented at trial sufficient to prove constructive possession for the following offenses: Possession with Intent to Deliver, Possession of a Controlled Substance, Possession of Paraphrenalia?

2. Sweitzer timely complied with the order of the court to file a Pa.R.A.P. 1925(b) statement of errors complained on appeal.

Did the trial court err in admitting evidence which contained an image of [Sweitzer's] Access card, unfairly prejudicing [Sweitzer] and providing cumulative evidence of identificaton?

Sweitzer's Brief, at 2.

█ In his first issue, Sweitzer contends the Commonwealth presented insufficient evidence showing he possessed the prerequisite knowledge of the existence and location of the items containing contraband, and the power and intent to exercise control over the contraband. The following principles guide our review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Irvin*, 134 A.3d 67, 75–76 (Pa. Super. 2016) (citation omitted).

The crime of possession of a controlled substance is defined in Section 780–113(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act (Act):

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: ...

> > (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780–113(a)(16). The crime of possession with intent to deliver is defined in Section 780–113(a)(30) of the Act:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: ....

> > (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(3). The crime of possession of drug paraphernalia is defined in Section 780–113(a)(32) of the Act:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: ....

> > (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, man-

ufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780–113(a)(32).

■ Because Officers Bolt and Coverly did not recover the drugs or drug paraphernalia from Sweitzer's person, the Commonwealth must establish Sweitzer's constructive possession of the contraband to support his convictions.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted).

Here, Sweitzer claims that the evidence was insufficient to prove beyond a reasonable doubt that he had constructive possession of the contraband found in the seat cushions of the vehicle, as well as the contraband discovered in the black carrying bag located between the front driver's and passenger's seats. Sweitzer asserts that he was one of two persons present in the vehicle. He argues there was no testimony indicating his knowledge of the contents of the van, or existence of contraband found inside the vehicle. In addition,

he points to the fact that no contraband was found on his person.

Here, the trial court considered:

The evidence related to the knowing and intentional possession of the drug paraphernalia, the meth, and the tablets came in through the testimony of Officers Bolt and Coverly. . . . .

- [Sweitzer] entered the minivan by opening the front passenger door.

- When the traffic stop was initiated, Officer Bolt observed that [Sweitzer] had moved from the passenger seat to the rear seat of the minivan.

- The driver later informed Officer Coverly that [Sweitzer] had been sitting in the front passenger seat and didn't indicate a desire to move to the rear seat until [Officer Bolt's] overhead lights were activated indicating the driver should stop the vehicle.

- [Sweitzer] placed himself across the entire rear seat with his feet on a plastic bucket which obstructed the officer's view of the area between the two front seats where the black bag containing paraphernalia was located.

- In the crevice of the rear seat, Officer Coverly found a tin containing meth. That tin was hidden in a Newport cigarette packet. Upon a later and deeper inspection of the crevice, Officer Bolt found a round tin containing the tablets and another tin containing small plastic baggies.

- [Sweitzer] admitted that he preferred to smoke Newport cigarettes.

- [Sweitzer] was lying on his flannel jacket that concealed a box containing a digital scale with a razor blade taped to the box. The batteries powering that digital scale matched the brand ("Cell Max") and the size of

batteries found in [Sweitzer's] pocket.

- The black bag that was located between the front seats, next to the seat in which [Sweitzer] had been sitting prior to the stop, contained a "snus"[3] tin that matched the tin found in the Newport cigarette pack.
- During the traffic stop [Sweitzer] related to Officers Bolt and Coverly separately that he was suffering from abdominal pain, yet he refused both of their offers to have medical assistance called.
- Officer Bolt testified prior to the traffic stop, the minivan was travelling away from the nearest hospital.
- [Sweitzer] made no more complaints of pain after his arrest.

\* \* \* \*

The Commonwealth presented several items of alleged drug paraphernalia to the jury including: numerous containers, two digital scales, a razor, a piece of plastic straw, numerous small plastic baggies, and a metal spoon. These items were found in three different locations. Matching batteries were found in [Sweitzer's] pocket and inside the digital scale lying under [Sweitzer] on the rear seat. The razor was taped to that scale's box. Two matching "snus" tins were found: (1) the tin containing the meth was located in the rear seat's crevice; and (2) the tin containing the small plastic baggies was found in the small black carry bag. The black carry bag also stored the second digital scale, the metal spoon, and pieces of plastic straw.

When examining the physical evidence and considering the testimony presented by the Commonwealth, in the light most favorable to the Commonwealth, we find

that [Sweitzer's] claims of insufficient evidence to prove the element of possession related to any item identified as drug paraphernalia has little merit. Although [Sweitzer] was not carrying the two digital scales, the metal spoon, the tins containing the meth, the tablets, or the small plastic baggies on his person, his actions show knowledge that illegal and controlled substances were on and in the rear seat of the minivan. His actions also showed a desire to protect and exert control over the area where these items were located. Therefore, we find there was sufficient evidence for the fact finder to find beyond a reasonable doubt that [Sweitzer] was in possession of [all of the] identified drug paraphernalia items.[9]

[9] We note that in order for the record to support a finding of guilty on the offense of Possession of Drug Paraphernalia, the jury is required to find only one such item in [Sweitzer's] possession.

\* \* \* \*

The evidence related to possession of the meth and the tablets is the same as addressed above for the drug paraphernalia. The Commonwealth presented evidence related to three substances: meth, and the oxycodone and alprazolam tablets ("the tablets").[10]

[10] [Sweitzer] stipulated that these substances are controlled substances.

Again, taking the evidence in the light most favorable to the Commonwealth, [Sweitzer's] actions show his awareness that the controlled substances were in the tins concealed in the crevice of the rear seat. [Sweitzer] physically placed himself between the controlled substances and the officers. Also, the tin containing the meth was hidden in a

---

**3.** "Snus is a type of moist powdered tobacco, typically held in the mouth between the lips and gums." https://en.oxforddictionaries.com/definition/snus

**260**

Newport cigarette packet, [Sweitzer's] preferred brand of cigarettes. Also in that crevice was the tin containing the tablets of oxycodone and alprazolam. We find that there was sufficient evidence showing beyond a reasonable doubt that [Sweitzer] was knowingly in possession of these three controlled substances and had the intent to control them.

Trial Court Opinion, 5/19/17, at 8–12 (record citations omitted).

We agree with the trial court's sound analysis. Applying our standard of review, and in light of Sweitzer's suspicious behavior in the van, the location of the contraband within the immediate reach of Sweitzer and in a Newport cigarette pack, Sweitzer's stated preference during his processing for Newport cigarettes, and matching "Cell Max" batteries that were found on his person and inside the digital scale lying under Sweitzer, we conclude there was sufficient evidence for the jury to reasonably infer Sweitzer had both the power and intent to control the drugs and drug paraphernalia located in the rear portion of the van.

We separately address the small black carrying bag located in the front of the vehicle directly between the driver's and passenger's seats.[4] Sweitzer was found in the rear portion of the vehicle, and the bag was outside of Sweitzer's immediate reach. Officer Bolt testified that he did not witness Sweitzer bring the bag into the van. However, the driver of the van testified Sweitzer initially sat in the passenger seat upon entering the van, and moved to the rear bench after Officer Bolt activated his overhead lights. Moreover, Officer Bolt testified Sweitzer entered the van through the front passenger door.[5] Therefore, the bag was within Sweitzer's immediate reach before he switched seats. In addition, the bag contained a snus tin that matched the snus tin found in the Newport packet.[6] In light of Sweitzer's close proximity to the bag upon entering the van, and the matching items, there is sufficient evidence to support the inference that Sweitzer had the power and intent to control the drug paraphernalia located in the small black carrying bag.

In his second and final issue, Sweitzer contends that the trial court erred in admitting Commonwealth's Exhibit 6, a photograph showing Sweitzer's Access card[7] alongside additional items found on Sweitzer's person, because such evidence was not relevant and was prejudicial.[8]

The following principles guide our review:

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "questions concerning the admissibility of evidence lie within the

4. Commonwealth's Exhibits 13 and 15 depicted the bag and its contents. The relevant items found were a Camel snus tin, a Gerber brand baby spoon, several small plastic baggies, plastic straws, and a second digital scale.

5. *See* N.T., 11/15/16, p. 32.

6. The digital scale found in the bag also contained "Rayovac" batteries that matched a "Rayovac" battery found on Sweitzer's person.

7. As explained by the trial court, "Pennsylvania Access cards are provided to Medical Assistance recipients, who claim indigence, receive cash assistance, and/or food stamps, as well as medical services when eligible." Trial Court Opinion, 5/19/2017, at 13 n.11.

8. The trial court did sustain Sweitzer's objection to Commonwealth Exhibit 3, a photograph that grouped the digital scale and the drugs with items that had been found on Sweitzer's person. The trial court ruled that the photograph was too suggestive. *See* N.T., 11/15/16, at 46.

sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent clear abuse of discretion."

*Commonwealth v. Baker*, 963 A.2d 495, 503–04 (Pa. Super. 2008) (citations omitted). Additionally,

[i]t is not sufficient to persuade the appellate court that it might have reached a different conclusion [;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Christine*, 633 Pa. 389, 125 A.3d 394, 397 (2015) (citations omitted).

The general admission of evidence is governed by Rule 402 of the Pennsylvania Rules of Evidence. Rule 402 provides:

All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.

Pa.R.E. 402.

The exclusion of relevant evidence is governed by Rule 403 of the Pennsylvania Rules of Evidence, which provides:

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wast-

ing time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

■ Lastly,

"Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative values outweighs the likelihood of unfair prejudice."

*Commonwealth v. Hicks*, 638 Pa. 444, 156 A.3d 1114, 1125 (2017) (citations omitted).

■ Here, Sweitzer contends the admission of Commonwealth's Exhibit 6, showing his Pennsylvania Access card and other items found on his person after the search incident to arrest,[9] including items of identification and over $500 cash, created unfair prejudice when depicted together with other contraband items. Specifically, Sweitzer argues:

Allowing the jury to view the card and identifying [Sweitzer] as the recipient of assistance programs unfairly prejudiced [Sweitzer]. It created a presumption of indigence or some other financial dependency that created a presumption that [Sweitzer] did in fact possess the contraband with intent to deliver, as an otherwise illicit means of obtaining funds.

Sweitzer's Brief at 15. Therefore, Sweitzer claims the prejudicial effect of the photograph outweighed its probative value.

Additionally, Sweitzer claims the Access card had little probative value and was cumulative evidence with respect to his identification at trial because other items already included in Commonwealth's Ex-

---

9. Commonwealth's Exhibit 6 included the following items: cash, a Visa debit card, a Boilermaker's debit card, a Speedy Rewards membership card, a Pennsylvania Access card, a driver's license, four batteries (includ-

ing two "Cell Max," one "Rayovac," and one "Duracell" battery), and a mobile phone. *See* Trial Court Opinion, 5/19/17, at 14. *See also* N.T., 11/15/2017, at 72–76.

hibit 6 adequately went towards his identification. Sweitzer's Brief at 15. Lastly, Sweitzer suggests the Commonwealth could have easily remedied his objection by redacting, cropping, censoring, or removing the Access card from Exhibit 6. *Id.* at 16.

In support of its ruling, the trial court explained that it considered the relevance of the exhibit prior to overruling Sweitzer's objection:

> In so doing, we considered the proffered expert testimony of Corporal Michael P. Skahill. Cpl. Skahill testified that drug dealing is a cash business and drug dealers tend to carry large sums of cash. The possession of the Access card tends to establish a material fact in the case: that [Sweitzer] was likely unemployed and that the money was therefore acquired by means other than employment. The Access card therefore supports a reasonable inference of material fact in the case, that [Sweitzer] received the cash as payment for illegal drug sales. Therefore, the Access card is relevant.

Trial Court Opinion, 5/19/2017, at 13 (internal citations and footnotes omitted).

Next, the trial court considered whether the probative value of the photograph outweighed any potential prejudice. The trial court reasoned:

> In the instant case, Commonwealth's Exhibit 6 was used very briefly to identify the items found on [Sweitzer's] person. While the Access card was pictured in Commonwealth's Exhibit 6, there were also several other items including: cash, a Visa debit card, a Boilermaker's debit card, a Speedy Rewards membership card, a driver's license, batteries, and a mobile phone. Officer Bolt was questioned generally about the photograph and he responded that the cards in Commonwealth's Exhibit 6 showed

[Sweitzer's] name and identification information. No special attention was cast upon any item in particular, and neither [Sweitzer's] presumed indigence in securing the card, nor the Access card itself, was addressed in any fashion. We find Commonwealth's Exhibit 6 and the testimony related to it failed to "inflame the jury" to the point that the jury made a finding of guilt on "something other than the legal propositions relevant to the case" Hence, we find no error in admitting Commonwealth's Exhibit 6 into evidence.

*Id.* at 14 (internal citations and footnotes omitted).

Based on our review, we discern no abuse of discretion in the trial court's decision. The trial court determined Commonwealth's Exhibit 6 was relevant to the case because the depiction of a large sum of cash along with the Access card helped establish a material fact in the case, *i.e.*, that the cash found on Sweitzer's person was acquired by means other than employment. While the trial court offered this reasoning as support for its determination of the probative value of Exhibit 6, it is important to emphasize that Exhibit 6 showed the cash and Sweitzer's Access card **together with** Sweitzer's Fulton Bank Visa debit card, Sweitzer's Boilermakers' Visa debit card, Sweitzer's United Healthcare card, a Speedy Rewards membership card, Sweitzer's Pennsylvania driver's license, four batteries and a cell phone. As such, we find the photograph of Sweitzer's Access card and other items was relevant for the purpose utilized by the Commonwealth, namely, to show what Sweitzer possessed on his person at the time of the search incident to arrest. *See* N.T., 11/15/2016, at 76.

Furthermore, we agree with the trial court that the probative value of Exhibit 6 was not outweighed by a danger of unfair

prejudice. The Access card was not high-lighted in any way in the photograph. Moreover, Exhibit 6 was used briefly by the Commonwealth, and the Commonwealth did not single out or explain the Access card to the jury. Accordingly, we reject Sweitzer's claim the trial court committed reversible error in admitting Commonwealth's Exhibit 6, showing Sweitzer's Access card and other items found on him at the time of his arrest.

Having reviewed the issues raised by Sweitzer, and having found them to be meritless, we affirm.

Judgment of sentence affirmed.