J-S05022-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL ANTHONY YOUNGER | : | |
| | : | |
| Appellant | : | No. 916 WDA 2017 |

Appeal from the Judgment of Sentence October 13, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001084-2015

BEFORE: OLSON, J., OTT, J., and STRASSBURGER,* J.

MEMORANDUM BY OTT, J.:                                          FILED APRIL 10, 2018

Jamal Anthony Younger appeals nunc pro tunc from the judgment of sentence imposed October 13, 2015, in the Fayette County Court of Common Pleas. The trial court sentenced Younger to a term of five to 10 years' imprisonment, followed by four years' probation, after a jury convicted him of robbery[1] and related charges. Younger asserts two claims of trial court error on appeal: (1) the court erred in failing to sustain his objection that one of the victim's answers during cross-examination was unresponsive, and (2) the court erred in permitting the Commonwealth to admit into evidence Younger's prior criminal record absent proper authentication. For the reasons below, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] See 18 Pa.C.S. § 3701(a)(1)(iii).

The facts underlying Younger's convictions are as follows. In the early morning hours of May 22, 2015, the victim, Thomas Hall III, was at Aldolph's Bar in Masontown. Hall was acquainted with both Younger and co-conspirator, John Charles Thomas, and he saw Younger in the bar sometime that evening. See N.T., 10/5/2015, at 20-21, 30.[2] When Hall left at around 2:00 a.m., he encountered Younger and Thomas outside the bar. Hall explained the events that transpired as follows:

> When I exited the bar, [] Thomas pulled a gun out and pointed it at me and demanded that I give him all of my money, and while the gun was aimed at me, that's when [] Younger started searching me and patting me down, and that's when he took my wallet, both of my cell phones and my prescription medication.

Id. at 22. Hall stated both men told him they would kill him if he did not give them his money. See id. at 22-23. Hall explained that after the men robbed him, Younger gave him back his wallet[3] and one cell phone, and Thomas told him to go back into the bar. See id. at 23. Later that day, Hall saw Younger again at the location where the robbery occurred, and stated that Younger was "trying to explain" to Hall that he "stopped [Hall] from getting shot." Id. at 24. During the investigation of the incident, the police obtained security

_____

[2] Hall could not recall if he saw Thomas in the bar prior to the robbery. See N.T., 10/5/2015, at 30.

[3] Hall testified there was no money in his wallet. See id. at 23.

video from a camera outside of the bar, which showed Thomas and Younger robbing Hall at gunpoint.[4] See Trial Court Opinion, 10/2/2017, at 2.

Younger was subsequently arrested and charged with two counts of robbery, and one count each of simple assault, recklessly endangering another person, theft, receiving stolen property, and criminal conspiracy.[5] The case proceeded to a jury trial, and, on October 6, 2015, a jury returned a verdict of guilty on all charges. Younger was sentenced on October 13, 2015 to a term of five to 10 years' imprisonment, followed by four years' probation, on his conviction of robbery under subsection 3701(a)(1)(iii). See 18 Pa.C.S. § 3701 (a)(1)(iii) ("A person is guilty of robbery if, in the course of committing a theft, he … commits or threatens immediately to commit any felony of the first or second degree"). The court imposed no further penalty on the remaining convictions.

_____

[4] We note both Younger and Thomas, who had entered a guilty plea prior to trial, testified for the defense. Thomas claimed he had bad blood with Hall, and Younger only participated in the robbery because Thomas threatened him. See N.T., 10/5/2015, at 57 ("I told Mr. Younger that if he didn't do what I told him that I needed to do, then I was going to do the same thing to him."). Younger testified that Thomas' threat was not so direct, but rather Thomas told him that if Younger did not "grab [Hall] and make sure he doesn't leave, [Thomas was] just going to start shooting." Id. at 65. He also insisted he apologized to Hall the next day. See id. at 67.

[5] See 18 Pa.C.S. §§ 3701(a)(1)(iii) and (v), 2701(a)(3), 2705, 3921(a), 3925(a), and 903, respectively.

Younger filed a timely direct appeal, challenging the sufficiency of the evidence supporting his convictions. A panel of this Court affirmed the judgment of sentence, concluding that Younger had waived his claim because he filed an "overly broad [Pa.R.A.P.] 1925(b) [concise statement]" which "failed to alert the trial court to which elements of which offenses he intended to challenge." Commonwealth v. Younger, 156 A.3d 353 [1676 WDA 2015](Pa. Super. 2016) (unpublished memorandum at 3).

Thereafter, on January 3, 2017, Younger filed a timely, pro se, petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA").[6] Counsel was appointed, and filed an amended petition alleging the ineffectiveness of direct appeal counsel for failing to file a proper Rule 1925(b) statement. On May 30, 2017, the PCRA court entered an order reinstating Younger's direct appeal rights nunc pro tunc. This timely appeal followed.[7]

In his first issue on appeal, Younger contends the trial court erred when it failed to sustain his objection to an answer provided by Hall during his cross-examination, and failed to provide a curative instruction. See Younger's Brief at 8-9. His claim is based upon the following testimony:

[Defense counsel:] Didn't you testify earlier that [Younger] did apologize in some manner as this was going on?

_____

[6] 42 Pa.C.S. §§ 9541-9546.

[7] In its May 30, 2017, order, the PCRA court also directed Younger to file a Rule 1925(b) concise statement. Younger complied with the court's directive, and filed a concise statement the same day as his notice of appeal.

- 4 -

[Hall:]  I wouldn't really call it an apology.  He never …

[Prosecutor:]  Judge, I am going to object because this is a mischaracterization.  The testimony was that [Younger] apologized way later the next day, and it wasn't really that he apologized.  There is no such testimony on the record.

THE COURT:  You have asked the question and he has essentially answered it and said that he didn't call it – he wouldn't call it an apology.

[Defense counsel:]  Okay.

MR. HALL:  Am I allowed to say something?

THE COURT:  You have to wait for a question unless you are answering that last question.

MR. HALL:  Yeah, it is that last question.  I mean, he found out that the video got released to the police.

[Defense counsel:]  Objection.  Nonresponsive.

MR. HALL:  And, that's when he got scared …

[Defense counsel:]  That's nonresponsive.

THE COURT:  Hold on, Mr. Hall.  Okay.  Don't assume what was going on in his mind.  What you are saying is that you had heard this video was available before you ever had any further communications with him; is that what you are saying?

MR. HALL:  Yeah.

THE COURT:  Okay.  You can proceed, [defense counsel].

N.T., 10/5/2015, at 36-37.

Here, Younger argues Hall's statement, that Younger apologized only after learning of the video footage, was "non responsive to the question asked" by Younger's attorney, and the trial court "had a duty to sustain the objection and provide the jury with a curative instruction that they must ignore these statements."  Younger's Brief at 9.  Furthermore, he maintains the court's

failure to do so constituted reversible error "because [] Hall was able to imply to the jury that [Younger's] apology was only an attempt to cover up his part in the robbery after [he] learned that the police had the video of the incident." Id.

"[T]he trial court has the power to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence, to avoid needless waste of time." Commonwealth v. Boxley, 838 A.2d 608, 615 (Pa. 2003), citing Pa.R.E. 611(a). Here, although the trial court did not explicitly sustain Younger's objection, it did so implicitly, when it instructed Hall "don't assume what was going on in [Younger's] mind." N.T., 10/5/2015, at 37. Moreover, while the court did not provide a curative instruction, which directed the jury to disregard Hall's prior comment, Younger did not request such an instruction, and accordingly, this claim is waived. See Commonwealth v. Sandusky, 77 A.3d 663, 670 (Pa. Super. 2013) ("[E]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver.") (quotation omitted). Therefore, Younger is entitled to no relief on this claim.

Next, Younger argues the trial court erred in admitting a certified copy of his prior criminal record into evidence when the Commonwealth failed to present a witness to authenticate the document. See Younger's Brief at 10. He insists the document, which was used by the Commonwealth to establish Younger had a prior crimen falsi conviction, was a business record pursuant

to 42 Pa.C.S. § 6108, and, therefore, had to be authenticated by a qualified witness. See id. at 10-11.

> Our review of a trial court's evidentiary ruling is well-settled:
>
> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, "questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent clear abuse of discretion."

Commonwealth v. Sweitzer, 177 A.3d 253, 260–261 (Pa. Super. 2017) (quotation omitted).

In the present case, prior to the second day of trial, the Commonwealth indicated to the court that it intended to present to the jury a copy of Younger's certified criminal record, which established he had a prior crimen falsi conviction. See N.T., 10/6/2015, at 78. Younger objected to the introduction of the document absent authentication by a proper witness, arguing it constituted a business record.[8] See id. at 79. The trial court overruled the objection, concluding the document was admissible pursuant to Pennsylvania Rule of Evidence 902. See id. at 80-81. We agree.

_____

[8] We note that although Younger objected to the lack of authentication of the criminal record, he improperly cited to Pa.R.E. 803(6), which governs hearsay. On this basis, we could conclude that his present argument is waived. See Commonwealth v. McGriff, 160 A.3d 863, 871 (Pa. Super. 2017), appeal denied, 176 A.3d 853 (Pa. 2017) ("It is well-established that '[a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made.'") (quotation omitted).

The Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, requires, as a general rule, the authentication of business records via the testimony of a custodian or qualified witness:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b). However, Pennsylvania Rule of Evidence 902 provides that certain documents are "self-authenticating" and "require no extrinsic evidence of authenticity to be admitted." Pa.R.E. 902. Included among these are certified copies of public records, which the rule defines as follows:

> A copy of an official record--or a copy of a document that was recorded or filed in a public office as authorized by law- if the copy is certified as correct by … the custodian or another person authorized to make the certification[.]

Pa.R.E. 902(4)(A).

In the present case, the trial court admitted a certified copy of Younger's prior record pursuant to Rule 902. The court explained the document had a "stamped signature of Kate Barkman from the Records Attested Department of Court Records" and was time-stamped "2010, January 22, 3:31 p.m., Department of Court Records, Criminal Division, Allegheny County, Pennsylvania." N.T., 10/6/2015, at 80. Because it concluded the "attestation is a certification by a custodian" pursuant to Rule 902(4)(A), the trial court overruled Younger's objection, and permitted the Commonwealth to offer the

document to the jury. Id. We find no error or abuse of discretion in the court's ruling. Furthermore, we note Younger fails to address the applicability of Rule 902, but rather, simply insists the document had to be authenticated under Section 6108. Accordingly, Younger's second claim also warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2018