J-S48039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEPHEN E. HOGG, JR. | : | |
| | : | |
| Appellant | : | No. 4039 EDA 2017 |

Appeal from the Judgment of Sentence July 3, 2017
in the Court of Common Pleas of Carbon County
Criminal Division at No.:  CP-13-CR-0001294-2016

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 29, 2018**

Appellant, Stephen E. Hogg, Jr., appeals from the judgment of sentence imposed following his jury conviction of two counts each of rape of a child, involuntary deviate sexual intercourse with a child (IDSI), unlawful contact with a minor, aggravated indecent assault of a complainant less than thirteen years of age, corruption of minors, and indecent assault of a complainant less than thirteen years of age.[1]  We affirm.

The trial court set forth the factual background of this case as follows:

> On March 6, 2016, Pennsylvania State Police Trooper Nicholas Mantione responded to a report of a sexual assault.  In response to this report, Trooper Mantione drove to the home of [Father] and his thirteen-year-old daughter, M.E., in Albrightsville, Pennsylvania.  When he arrived, Trooper Mantione spoke with [Father] about the report.  [Father] told him that his

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 3125(a)(7), 6301(a)(1)(ii), and 3126(a)(7), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

daughter, M.E., had told her friend and her friend's mother that she had been raped. Later, Trooper Mantione learned that M.E. told her friend, A.A., that she had been raped, and A.A.'s mother overheard the conversation and told [Father]. M.E. stated that a friend of her father, [Appellant], raped her when he stayed with the family eight (8) months earlier. Trooper Mantione concluded his investigation that day after speaking with [Father] and turned the investigation over to Trooper Eric Porpigilia of the Criminal Investigation Unit.

Trooper Porpigilia began his investigation by [arranging] for M.E. to be interviewed by the Children's Advocacy Center (hereinafter "CAC") in Scranton. In this interview, M.E. stated that [Appellant] raped her in July of 2015. M.E. stated that [Appellant] had raped her twice during the one (1) to two (2) month period that he lived with her family. The first incident occurred in [Appellant's] bedroom. It began when [Appellant] asked M.E. to come into his bedroom so he could try to fix her cellphone that was damaged after it had fallen in water. When she entered his bedroom, he shut the door, came up behind M.E., grabbed her jaw, and threw her onto the bed. He then told her that if she said anything he would kill her father and hurt her brothers. He proceeded to get in the bed with her and removed her pants and underwear. He then engaged in sexual intercourse with M.E. by penetrating her vagina with his penis. When he was engaging in sexual intercourse, she was lying on her side while he was behind her. He pushed M.E. onto her back and touched her vagina during intercourse, penetrating her vagina with his fingers. However, he did not perform oral sex on her during this incident. M.E. could not recall if he ejaculated and was unsure why he stopped engaging in intercourse with her. The incident ended when he told her to go to sleep in her room. M.E. complied and went into her bedroom.

According to M.E. in this interview, the second incident also occurred when [Appellant] was living with her family in July. Again, this incident occurred in his bedroom. M.E. stated that she was in [Appellant's] bedroom watching her little brothers play XBOX with him. She was initially sitting next to [Appellant] on the bed but he began rubbing and grabbing her thigh. In response, she moved to sit on the floor. M.E.'s brothers then left the room because [Father] was calling them for bed. M.E. attempted to leave the room as well, but [Appellant] grabbed her arm and told her to stay. He then pushed her onto his bed and held her down

by her neck. He tried to remove her shirt, but she prevented him from doing so. He did remove her pants and underwear. She tried to get across the bed to leave, but he pushed her against the bed frame and returned her to the bed. She was again lying on her side and he was again behind her. He again engaged in sexual intercourse with her by penetrating her vagina with his penis. He also performed oral sex on her during this incident prior to engaging in sexual intercourse. While he was engaging in sexual intercourse, M.E. kept trying to get up and repeatedly kicked him to escape. He did not ejaculate on this occasion. The incident ended when M.E. told [Appellant] that she was going to tell someone what had occurred. After she said this, he threatened to kill her. When it was over, he walked her to her bedroom and told her not to come out until the following day. A few weeks after this second incident, [Appellant] moved out of the [] home.

In addition to this forensic interview, Dr. Marla Farrell, a pediatrician who works at the Children's Advocacy Center, performed a medical evaluation of M.E. Because M.E. denied any oral or anal penetration, Doctor Farrell performed an exam of her genitals. In this exam, Dr. Farrell did not find any signs of trauma. Dr. Farrell testified that the lack of any signs of trauma could be caused by the eight (8) months between the alleged assault and the examination. Dr. Farrell also testified that, more often than not, in situations like M.E.'s there are no signs of trauma.

In May, Trooper Porpigilia interviewed [Appellant]. During this interview, [Appellant] told Trooper Porpigilia that he believed he lived with [M.E.'s family] in July of 2015. He said that he was there for a few weeks and that he had a good relationship with all three (3) of the [] children, including M.E. [Appellant] denied having any sexual contact with M.E.

(Trial Court Opinion, 2/05/18, at 1-5).

A jury found Appellant guilty of the above-listed offenses on April 6, 2017.[2] On July 3, 2017, the trial court sentenced Appellant to an aggregate

---

[2] Relevant to this appeal, on the day trial commenced, the court permitted the Commonwealth to amend the criminal information regarding the time-period in which the crime took place, from between July 1, 2015 and July 14, 2015,

term of incarceration of not less than eighteen nor more than thirty-six years.

Appellant filed a timely post-sentence motion on July 13, 2017, in which he

challenged, *inter alia*, the sufficiency and weight of the evidence. Following

oral argument, on December 8, 2017, the court entered an opinion and order

granting the post-sentence motion in part, by entering a judgment of acquittal

on one of the two IDSI counts. The court denied Appellant's motion in all

other respects, and noted that its decision did not affect its sentencing

scheme. (*See* Order, 12/08/17). This timely appeal followed.[3]

Appellant raises the following issues for our review:

[1.] Whether the trial court erred by allowing the Commonwealth to amend the information minutes before trial began to extend the time period these offenses could have occurred, eliminating [Appellant's] alibi defense?

[2.] Whether the trial court erred by allowing Doctor Clark to testify by telephone in violation of the Pennsylvania Rules of Criminal Procedure and in violation of [Appellant's] confrontation clause rights under the United States and Pennsylvania Constitution?

[3.] Whether the trial court erred by allowing Doctor Clark to testify that the victim was hospitalized because she was distressed about testifying as this testimony was unduly prejudicial violating Pa.R.E. 403?

_____

to the entire month of July 2015 through the end of September 2015. (*See* Information, 10/12/16, at 1-3; Order, 4/04/17).

[3] Appellant timely complied with the trial court's directive to file a concise statement of errors complained of on appeal on December 18, 2017. The court entered an opinion on February 5, 2018, in which it incorporated its December 8, 2017 opinion. *See* Pa.R.A.P. 1925.

[4.] Whether the trial court erred by finding the jury's verdict was not against the weight of the evidence when the Commonwealth relied primarily on the victim's testimony which was inconsistent, not verified by any other witness, but in fact contradicted by other witnesses, and the victim did not report these assaults until eight months later?

(Appellant's Brief, at 5-6) (some capitalization omitted).

Appellant first challenges the trial court's decision, on the day of trial, to allow the Commonwealth to amend the information relating to the time-period in which the crimes took place (from between July 1, 2015 and July 14, 2015, to the entire month of July 2015 through the end of September 2015). (*See* Appellant's Brief, at 22-33; this Memorandum, *supra* at *3-4 n.2). Appellant argues that permitting this amendment had the prejudicial effect of eliminating his alibi defense, because he lived with his girlfriend in July of 2015. (*See* Appellant's Brief, at 22, 29-30). This issue merits no relief.

We review a trial court's decision to allow an amendment to a criminal information for an abuse of discretion. *See Commonwealth v. Small*, 741 A.2d 666, 681 (Pa. 1999), *cert. denied*, 531 U.S. 829 (2000). Pennsylvania Rule of Criminal Procedure 564 governs the amendment of a criminal information. It provides, in pertinent part: "The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564.

. . . The purpose of this rule is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the

- 5 -

defendant is uninformed. When a challenge is raised to an amended information, the salient inquiry is

[w]hether the crimes specified in the original . . . information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended . . . information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

* * *

. . . [P]rejudice in this context refers to charging a defendant with crimes arising out of a set of events unrelated to the conduct that served as the basis for the original charges. . . .

**Commonwealth v. Samuel**, 102 A.3d 1001, 1008-09 (Pa. Super. 2014), *appeal denied*, 134 A.3d 56 (Pa. 2016) (citations and quotation marks omitted).

Absent a showing of prejudice, an amendment to an information is proper even on the day of trial. **See Commonwealth v. Page**, 965 A.2d 1212, 1224 (Pa. Super. 2009), *appeal denied*, 74 A.3d 125 (Pa. 2013).

Here, the dates in the information relating to the timeframe of Appellant's offenses were not substantially changed. The Commonwealth sought to amend the information because Appellant admitted that he resided at M.E.'s residence in September of 2015, after he originally informed authorities that he resided there in July of 2015. (**See** Petition to Amend Information, 4/03/17, at unnumbered pages 2-3; Appellant's Petition for

- 6 -

Special Relief, 3/31/17, at unnumbered page 2, ¶ 8; N.T. Trial, 4/03/17, at 39).  The amendment did not change the crimes or the relevant pattern of events; it simply extended the period of time in which the events occurred. Therefore, upon review, we conclude that Appellant suffered no prejudice because of the change.  *See* Pa.R.Crim.P. 564; *Samuel*, *supra* at 1009. Appellant's first issue lacks merit.

Appellant next argues the trial court erred by allowing one of the Commonwealth's witnesses, child and adolescent psychiatrist Dr. Andrew Clark, to testify at trial by telephone.[4]  (*See* Appellant's Brief, at 34-39). Appellant contends that this mode of testimony violated his confrontation clause rights.  (*See id.* at 34-37).  We agree.

"Whether [an] [a]ppellant's confrontation rights were violated is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary."  *Commonwealth v. Akrie*, 159 A.3d 982, 988 (Pa. Super. 2017) (citation and footnote omitted).  "[T]he Sixth Amendment of the United States Constitution provides that, 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]' U.S. Const. Amend. VI."  *Id.*  "This protection has been incorporated into the

_____

[4] Dr. Clark testified that he treated M.E. in June 2016, when she was hospitalized because she was distressed about testifying at an upcoming hearing in this matter, and had concerns relating to her father's serious health condition.  (*See* N.T. Trial, 4/04/17, at 87, 90, 96).

Fourteenth Amendment and thus is applicable in state court prosecutions."
*Id.* (citation omitted).

> [In *Maryland v. Craig*, 497 U.S. 836 (1990) the United States Supreme] Court explained that prior precedents interpreted the Confrontation Clause to guarantee a face-to-face meeting with witnesses at trial, which derived from both the literal reading of the Clause as well as its historical roots. *Id.* at 844. *Craig* nevertheless stated that this right is not absolute[.]. . . *Craig* determined that face-to-face confrontation is not "an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Id.* at 849–50. Simultaneously, that requirement could not "easily be dispensed with." *Id.* at 850. The State could justify its limitation "only where denial of such confrontation is **necessary to further an important public policy** and only where the reliability of the testimony is otherwise assured." *Id.*

*Commonwealth v. Tighe*, 184 A.3d 560, 567 (Pa. Super. 2018) (one citation omitted; emphasis added).

Important concerns such as efficiency, security, convenience, and cost-saving are not sufficient reasons to circumvent a defendant's constitutional right to confrontation. *See Commonwealth v. Atkinson*, 987 A.2d 743, 750-51 (Pa. Super. 2009), *appeal denied*, 8 A.3d 340 (Pa. 2010) (finding Commonwealth's presentation of testimony using two-way videoconferencing system violated appellant's right to confrontation where no compelling policy concern necessitated its use).

Instantly, at trial, the Commonwealth advised that telephonic testimony from Dr. Clark was necessary because he was the only psychiatrist on duty at KidsPeace Hospital, and he was needed at that facility. (*See* N.T. Trial, at 4/04/17, at 58-61). While we agree with the trial court that Dr. Clark's

treatment of at risk children is an important concern, the same can be said of the work of nearly any medical professional. We therefore conclude that Dr. Clark's professional responsibilities did not rise to the level of an important public policy consideration, and were not a sufficient reason to circumvent Appellant's constitutional right to confrontation. ***See Tighe***, ***supra*** at 567; ***Atkinson***, ***supra*** at 750-51. This conclusion, however, does not end our analysis.

Since we have determined that Appellant's confrontation clause rights were violated, we turn to whether this error was harmless. ***See Commonwealth v. Brown***, 139 A.3d 208, 219-20 (Pa. Super. 2016), *aff'd*, 185 A.3d 316 (Pa. 2018) (explaining that after finding of confrontation clause violation, second step is to determine if violation was harmless).

> An appellate court will find harmless error where:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimis*;
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Brown***, 185 A.3d 316, 330 (Pa. 2018) (citation omitted). "The Commonwealth bears the burden of establishing harmlessness beyond a reasonable doubt." ***Id.*** (citation omitted).

Here, Dr. Clark's testimony was very narrow in scope, limited to giving sparse details about M.E.'s hospitalization, spanning only a few pages of the voluminous notes of testimony from trial in this case. (*See* N.T. Trial, 4/04/17, at 87-92, 95-98). Appellant was afforded the opportunity to, and did, cross-examine him. (*See id.* at 97-98). After review, we find that any prejudice caused by Dr. Clark's testimony by telephone instead of in person was *de minimis*. Therefore, the error was harmless beyond a reasonable doubt. Accordingly, Appellant's second issue does not merit relief.

Appellant next challenges the content of Dr. Clark's testimony regarding M.E.'s hospitalization, which he claims was unduly prejudicial, in violation of Pennsylvania Rule of Evidence 403. (*See* Appellant's Brief, at 39-44; *see also* this Memorandum, *supra* at *7 n.4). Appellant concedes that Dr. Clark's testimony was relevant, but argues that its probative value was minimal, and that it was highly prejudicial because it created sympathy for M.E. with the jury. (*See* Appellant's Brief, at 39-44). This issue merits no relief.

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established, questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent clear abuse of discretion.

*Commonwealth v. Sweitzer*, 177 A.3d 253, 260–61 (Pa. Super. 2017) (citation and quotation mark omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. McCarthy*, 180 A.3d 368, 377 (Pa. Super. 2018) (citation

omitted). However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice . . . ." Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Id.**, at cmt.

> . . . [E]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

**McCarthy**, **supra** at 377 (citations omitted).

Here, the trial court noted that evidence regarding M.E.'s hospitalization for fear of testifying in front of Appellant was relevant to determining whether the rape occurred. (**See** Trial Ct. Op., 12/08/17, at 28-29). It determined that Dr. Clark's testimony was not unduly prejudicial, explaining:

> [I]t is not Dr. Clark's testimony that would cause an emotional reaction, but rather it is the characteristics of M.E., the victim, that increase the likelihood of an emotional reaction in the jurors. Dr. Clark's testimony does not create any more sympathy than that which already exists in cases of sexual assault against a child. Because a victim is inherently sympathetic is not a sufficient reason to exclude evidence that supports the Commonwealth's case in defense of that victim. . . .

(**Id.** at 29; **see id.** at 30).

We agree, and find that the challenged testimony was not "so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case." **McCarthy**, **supra** at 377

(citation omitted); *see also Commonwealth v. Pickford*, 536 A.2d 1348, 1351 (Pa. Super. 1987) (rejecting appellant's claim that he was unduly prejudiced by testimony that, following rape, victim moved out of her apartment for several days, was frightened to be alone, had difficulty sleeping and eating, and would wake during night screaming). Therefore, we discern no clear abuse of discretion in the court's admission of Dr. Clark's testimony. *See Sweitzer*, *supra* at 260–61. Accordingly, Appellant's third issue merits no relief.

In his final issue, Appellant challenges the weight of the evidence, arguing that M.E.'s testimony was uncorroborated by other evidence, inconsistent, and not worthy of belief. (*See* Appellant's Brief, at 44-51). Appellant also claims that M.E.'s eight-month delay in reporting the rape allegations diminishes the credibility of her testimony, which was outweighed by Appellant's credible testimony that the incidents did not occur. (*See id.* at 51). This issue merits no relief.

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> *     *     *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.

- 12 -

Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

\* \* \*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

. . . [I]n passing upon the credibility of a single eyewitness, the jury is free to believe all, part, or none of the witness's testimony.

*Commonwealth v. Rodriguez*, 174 A.3d 1130, 1139-40 (Pa. Super. 2017), *appeal denied*, 186 A.3d 941 (Pa. 2018) (citations omitted).

Instantly, with regard to Appellant's argument based on lack of corroboration, it is well settled that "[i]n the case of sexual offenses, the testimony of the victim alone is sufficient to convict, and medical evidence is not required if the fact finder believes the victim." *Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super. 2003), *appeal denied*, 833 A.2d 141 (Pa. 2003) (citation omitted); *see also* 18 Pa.C.S.A. § 3106 (providing that testimony of complainant need not be corroborated in sexual offense prosecutions).

Additionally, at trial, Dr. Marla Farrell, the pediatrician who performed a medical examination of M.E., testified that although the examination lacked signs of trauma, "most genital exams of children who have been subjected to

abuse or assault are normal." (N.T. Trial, 4/03/17, at 153). She explained that this area of a child's body "has special characteristics that make it very easy for any trauma that would have occurred to heal very quickly." (**Id.**). Dr. Farrell also referenced the eight-month timeframe that had passed between the abuse and the examination as a reason for the lack of signs of trauma. (**See id.** at 152). She explained that, "most times children who have been traumatized have a difficult time disclosing and there is a lag between the time the event happens and the time [of the exam.]" (**Id.** at 153).

With regard to any inconsistencies in M.E.'s description of the abuse, Jill Geissinger, a supervisor at Carbon County Children and Youth, testified that a child typically does not recount an event in exactly the same way, each time they tell it. (**See** N.T. Trial, 4/04/17, at 182-83, 187). Usually, "a child will say very limited disclosure and . . . slowly as they get more comfortable, as they go through therapy, as time wears on, they recall more details[.]" (**Id.** at 183).

The trial court, after observing all of the witnesses and hearing the testimony, determined that the jury's decision to credit the testimony of M.E. over that of Appellant comported with justice, and that the evidence fully supported its guilty verdict. (**See** Trial Ct. Op., 12/08/17, at 16-17, 23). Upon review of the record, we agree, and conclude that the court did not abuse its discretion in denying Appellant's weight claim. **See Rodriguez**, **supra** at 1139-40. Appellant's final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/18