J-S68003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHARLES DANIEL LLOYD | : | |
| | : | |
| Appellant | : | No. 1469 WDA 2017 |

Appeal from the Judgment of Sentence September 12, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008103-2016

BEFORE:   SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 11, 2019**

Appellant, Charles Daniel Lloyd, appeals from the judgment of sentence entered following his convictions of multiple drug offenses and crimes related to his arrest.  We affirm the convictions but vacate the judgment of sentence and remand for resentencing.

The trial court set forth the underlying facts of this case as follows:

> On June 12, 2016, City of Pittsburgh Police Officer Christopher Mosesso was on patrol in the eastern section of Pittsburgh.  (T. pp. 4-5).  A little before noon, Officer Mosesso came into contact with a green minivan that exhibited numerous Vehicle Code violations, including lack of emission sticker, windshield obstructions, a loud exhaust, and a low-hanging exhaust system.  (T. p. 5). Officer Mosesso effectuated a traffic stop of the vehicle.  (T. p. 6).  Upon approaching the vehicle, Officer Mosesso noticed [Appellant] moving around in the middle of the van.  (T. p. 6).  [Appellant] was seated in a bucket seat on the passenger side of the middle row of the van.  (T. p. 6).  As the operator of the vehicle stopped in a manner that was impeding traffic, he instructed the driver to pull through the intersection and pull over.  (T. pp. 8-9).  While he was giving these instructions to

_____
* Former Justice specially assigned to the Superior Court.

the driver, he noticed [Appellant] moving his left arm in the center area between the two bucket seats. (T. p. 9).

When Officer Mosesso again approached the vehicle, he asked for identifying information for all of the passengers of the vehicle. (T. p. 9). [Appellant] provided two false names to him. (T. p. 9). While Officer Mosesso was conducting a check of the second name, he observed [Appellant] become very agitated and defensive with other officers who had arrived on scene. (T. pp. 10-11). Given his combative nature, [Appellant] was detained. (T. p. 11). While he was being detained, he struck and kicked the two other police officers. (T. pp. 11-12). At this point, considering [Appellant's] behavior and furtive movements while he was in the van, Officer Mosesso determined that he was going to conduct a wingspan search of the van. (T. p. 14). The wingspan search included the area immediately to the left of the seat where [Appellant] had been seated, as this was the area where [Appellant] had been reaching. (T. pp. 14-15). There Officer Mosesso found a bag and a camouflage jacket. (T. pp. 14-15). Underneath this camouflage jacket "was a camouflage glove that contained three bricks of heroin, two baggies of cocaine, one baggie of marijuana, and one baggie of five Xanax bars." (T. p. 14). After arrest, these narcotics were sent to the lab for testing. (T. p. 46). Ultimately, the lab confirmed the identity of these substances. (T. p. 46, Exhibit 3). There was no evidence collected that would indicate that [Appellant] was using illegal narcotics. (T. pp. 47-48).

Trial Court Opinion, 4/9/18, at 2-3.

Appellant was arrested and charged with two counts of aggravated assault, and one count each of possession of a controlled substance with intent to deliver ("PWID")-Heroin, possession of a controlled substance ("simple possession")-Heroin, PWID-Cocaine, simple possession-Cocaine, simple possession-Alprazolam, resisting arrest, false identification to law

enforcement, disorderly conduct, and possession of marijuana.[1]  Appellant

filed a motion to suppress on December 2, 2016.  The trial court held a

suppression hearing on June 22, 2017.  At the conclusion of the hearing, the

trial court granted Appellant's motion in part and denied it in part.[2]

Following the suppression hearing, Appellant proceeded to a stipulated

nonjury trial.  At the conclusion of the trial, the trial court found Appellant not

guilty of aggravated assault and possession of Alprazolam.  Appellant was

convicted of all other charges.  On September 12, 2017, the trial court

sentenced Appellant to serve an aggregate term of incarceration of twenty-

four to forty-eight months.  This timely appeal followed.  Both Appellant and

the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether [Appellant's] convictions for PWID-Heroin, Possession-Heroin, PWID-Cocaine, and Possession-Cocaine can be sustained under the theory of constructive possession when the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] had the intent to exercise control over the drugs in question?

II. Whether the trial court erred in not granting [Appellant's] motion to suppress the drug evidence recovered from the minivan in which he was a passenger when the Commonwealth failed to

---

[1] 18 Pa.C.S. § 2702(a)(3), 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(16), 18 Pa.C.S. § 5104, 18 Pa.C.S. § 4914(a), 18 Pa.C.S. § 5503(a)(1), and 35 P.S. § 780-113(a)(31), respectively.

[2] Specifically, the trial court granted Appellant's motion to suppress as to a video camera that was discovered in the van and denied the motion as to the traffic stop.

demonstrate that the police had reasonable suspicion to believe that the minivan was in violation of the Motor Vehicle Code provisions in question?

III. Whether [Appellant's] sentence is illegal when he is entitled to an additional 83 days' credit for time served from June 22, 2017 (when [Appellant] was convicted and his bond was revoked by the trial court), to September 12, 2017 (when [Appellant] was ultimately sentenced by the trial court)?

Appellant's Brief at 7.

In his first issue, Appellant argues that there was insufficient evidence presented to support his convictions of possession with intent to deliver and simple possession. Appellant's Brief at 16-27. Specifically, Appellant contends that the Commonwealth did not prove that he constructively possessed the contraband because it did not establish that Appellant had the intent to exercise control over the drugs. *Id*. at 16.

Our standard of review is well established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the

- 4 -

weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

In order to uphold a conviction of PWID pursuant to 35 P.S. § 780-113(a)(30), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) (*en banc*). "The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case." *Commonwealth v. Conaway*, 791 A.2d 359, 362-363 (Pa. Super. 2002). "[P]ossession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption." *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005). Expert opinion testimony is also admissible "to aid in determining whether the facts surrounding the possession of controlled substances are consistent with intent to deliver." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237 (Pa. 2007).

Regarding the crime of simple possession of narcotics, 35 P.S. § 780-113(a)(16) prohibits the following:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

Where the contraband a person is charged with possessing is not found on the defendant, the Commonwealth is required to prove constructive possession. *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa. Super. 2003). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004). Our courts have held that constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. *Commonwealth v. Johnson*, 920 A.2d 873, 882 (Pa. Super. 2007) (citing *Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992)).

We are mindful that constructive possession can be proven by circumstantial evidence, and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Commonwealth v. Clark*, 746 A.2d 1128, 1136 (Pa. Super. 2000) (quoting *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996)). Moreover, we have held that circumstantial evidence is reviewed by the same standard as direct evidence and a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003) (citations omitted).

The trial court addressed Appellant's challenge to the sufficiency of the evidence as follows:

> [Appellant's] first issue on appeal is that his drug-related convictions cannot be sustained, as the Commonwealth did not establish actual or constructive possession of the narcotics. The narcotics at issue here were not found on [Appellant's] person, therefore, he did not have actual possession of them. However, the evidence presented at trial, and found to be credible by this [c]ourt establishes that [Appellant] had constructive possession of the narcotics. The Pennsylvania Superior Court has defined constructive possession as "an inference arising from a set of facts that possession of the contraband was more likely than not." **Commonwealth v. Sweitzer**, 177 A.3d 253, 258 (Pa. Super. 2017) (citations omitted). Further, the **Sweitzer** Court noted that constructive possession is determined by the totality of the circumstances, and requires conscious dominion, which is defined as "the power to control the contraband and the intent to exercise that control." **Sweitzer**, 177 A.3d at 258.
>
> As Officer Mosesso testified, [Appellant] was the sole occupant of the middle row of the vehicle at the time of the traffic stop. [Appellant] made numerous furtive gestures toward the middle portion of the van. The narcotics were found in a glove under a jacket immediately adjacent to [Appellant's] seat in the vehicle, which is where [Appellant] was reaching during the traffic stop. As such, [Appellant's] actions clearly demonstrate conscious dominion over the contraband, and, therefore, constructive possession.

Trial Court Opinion, 4/9/18, at 4.

Likewise, our review of the certified record reflects that the Commonwealth established that Appellant had constructive possession of the contraband. Officer Mosesso testified that, due to various Motor Vehicle Code ("MVC") violations, he conducted a traffic stop of a green minivan, which contained three rows of seating. N.T., 6/22/17, at 6-7. Upon initially approaching the vehicle, the officer witnessed Appellant, who was seated

alone in the middle row of bucket seats, moving about in the center area between the seats. *Id*. While the officer was speaking with the driver of the vehicle, he again noticed Appellant "moving his left arm in the area of that center area between the two bucket seats." *Id*. at 9.[3] Further, it is undisputed that during the traffic stop Appellant provided the police with two false identities. Officer Mosesso indicated that he conducted a limited search of the vehicle "[g]iven the situation with the false IDs that were given and the furtive movements observed by [the driver] and [Appellant]." *Id*. at 13. Officer Mosesso then stated the following:

> due to the furtive movements of [the driver] and [Appellant] with them reaching around and what was observed, I was going to conduct a wingspan search of that general area where [the driver] and [Appellant] were. So I returned to the vehicle, got all the remaining occupants out of the vehicle and then I conducted a search of those general areas. During a search of the vehicle, between the two bucket seats in the middle to the left where [Appellant] was, underneath a camouflage jacket there was a camouflage glove that contained three bricks of heroin, two baggies of cocaine, one baggie of marijuana and one baggie of five Xanax bars.

*Id*. at 14. The following exchange then transpired between the prosecutor and Officer Mosesso:

> Q I just want to clarify again. Where exactly were these pills found or these drugs found?
>
> A So it was to the left, directly to the left of where [Appellant] was seated in the vehicle.

---

[3] Officer Mosesso also stated that he observed the driver of the vehicle "was moving some items around in her purse that she had sitting on her lap." N.T., 6/22/17, at 9.

Q So was this on the floor?

A No, right to the left of the seat was a bag.

Q Okay.

A Then on top of the bag were these two gloves, one which contained the narcotics, and that camouflage jacket was over top of the gloves.

Q So it goes jacket

A Correct.

Q -- gloves, bag, floor?

A Correct.

Q Was this the same area where you saw [Appellant] reaching?

A Yes.

*Id*. at 14-15. Officer Mosesso also testified that he did not see any of the other occupants of the vehicle reach toward the area were the contraband was discovered. *Id*. at 48.

This evidence, viewed in a light most favorable to the Commonwealth, is sufficient to establish that Appellant constructively possessed the glove containing the contraband that was found directly to the left of where only Appellant was seated and where Appellant was seen moving. Appellant's actions, which were observed by Officer Mosesso, reflect that Appellant had power to control the contraband and the intent to exercise such control. Accordingly, Appellant's assertion that the Commonwealth failed to present sufficient evidence to support his convictions lacks merit.

Appellant next argues that the trial court erred in denying his motion to suppress physical evidence. Appellant's Brief at 28-44. Appellant contends that the police officer lacked reasonable suspicion to effectuate a traffic stop based upon violations of the MVC, *i.e.*, Sections 4523(a),[4] 4323(c),[5] and 4524(c).[6] *Id*. at 37. We disagree.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

---

[4] "**Compliance with established sound levels. —** Every motor vehicle operated on a highway shall be constructed, equipped, maintained and operated so as not to exceed the sound level for the vehicle as prescribed in regulations promulgated by the department. The test procedures and instrumentation to be utilized shall also be established by regulation." 75 Pa.C.S. § 4523(a).

[5] "**Mufflers and related equipment. —** Every motor vehicle shall be equipped with a muffler or other effective noise suppressing system in good working order and in constant operation and no muffler or exhaust system shall be equipped with a cutout, bypass or similar device." 75 Pa.C.S. § 4523(c).

[6] "**Other obstruction. —** No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard." 75 Pa.C.S. § 4524(c).

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H). Moreover,

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *Commonwealth v. Blair*, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

*Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002).

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*).

"[T]he standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled." *Commonwealth v. Feczko*, 10 A.3d 1285, 1290-1291 (Pa. Super. 2010). Traffic stops based on a reasonable suspicion of criminal activity or a violation of the MVC under the authority of section 6308(b),[7] must serve a stated investigatory purpose.

---

[7] Section 6308(b) of the MVC provides, in pertinent part, as follows:

> Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a

*Id*. at 1291. Reasonable suspicion exists when there are specific and articulable facts that create a reasonable suspicion, based on the officer's experience, that there is criminal activity afoot. **Commonwealth v. Sands**, 887 A.2d 261, 271-272 (Pa. Super. 2005). Officers may initiate a stop based upon reasonable suspicion to gather further information to support the enforcement of the MVC. 75 Pa.C.S. § 6308(b); **Feczko**, 10 A.3d at 1288. Faulty exhaust systems and front windshield obstructions are violations for which there is a need for further investigation. **See Commonwealth v. Bailey**, 947 A.2d 808, 814-815 (Pa. Super. 2008) (concluding that "if an officer hears an unusually loud exhaust, the officer may reasonably infer that there is a problem with the muffler and initiate a stop based upon a reasonable suspicion that the muffler is not 'in good working order.'"); **Commonwealth v. Holmes**, 14 A.3d 89, 96-97 (Pa. 2011) (reasonable suspicion required to justify stop for windshield obstruction).

The trial court concluded that Officer Mosesso established he had reasonable suspicion to believe the vehicle in which Appellant was a passenger

---

vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

was in violation of multiple provisions of the MVC.  The trial court offered the following analysis:

> Initially, this [c]ourt found that Officer Mosesso had probable cause[8] to effectuate a traffic stop, as he credibly testified that he effectuated the traffic stop because the vehicle did not have an emission sticker, had windshield obstructions, a loud exhaust system, and a low hanging exhaust system. Ultimately, the lack of emission sticker was not found to be a violation of the Vehicle Code, as the vehicle was registered to an individual in Butler County which does not require emissions testing.  However, the other infractions were visible to Officer Mosesso at the time of the traffic stop and constituted a violation of the Vehicle Code.  Therefore, he possessed probable cause to effectuate a traffic stop.

Trial Court Opinion, 4/9/18, at 5.

Our review of the record reflects that Officer Mosesso testified that at the time he stopped the vehicle, he observed the green minivan had an "extremely loud exhaust," the "muffler was hanging low from the chassis of the vehicle," and there were "numerous windshield obstructions hanging from the front rearview mirror."  N.T., 6/22/17, at 5-6, 30-32.  This testimony is sufficient to establish reasonable suspicion necessary to stop the vehicle in which appellant was a passenger.  Thus, because the police officer articulated facts at the suppression hearing that amounted to reasonable suspicion, we

---

[8] The trial court was apparently of the mistaken belief that the officer required probable cause of a MVC violation in order to effectuate a stop of the vehicle. However, we will address this issue under the appropriate standard of reasonable suspicion of an MVC violation to justify the stop.  We further note that reasonable suspicion is a less stringent standard than probable cause. *Holmes*, 14 A.3d at 95.

- 14 -

conclude that the stop of Appellant's vehicle was lawful. Accordingly, the trial court did not err in denying Appellant's motion to suppress evidence obtained following the stop of the vehicle, and Appellant's second issue lacks merit.

Appellant last argues that his sentence is illegal because the trial court failed to properly calculate his credit for time served. Appellant's Brief at 45-46. Specifically, Appellant asserts that the trial court erred in failing to award him credit for the period he was incarcerated after his bond was revoked until he was sentenced, which is the equivalent of eighty-three days. *Id*. The Commonwealth has conceded that the case should be remanded to the trial court for a determination of whether Appellant is entitled to additional credit toward his sentence. Commonwealth's Brief at 29.

As we have stated, a "challenge to the trial court's failure to award credit for time served prior to sentencing involves the legality of sentence. A claim challenging the legality of a sentence is appealable as of right." *Commonwealth v. Little*, 612 A.2d 1053, 1053 n.1 (Pa. Super. 1992).

With regard to awarding credit for time served, the Sentencing Code provides, in relevant part, as follows:

### § 9760. Credit for time served

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result

> of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, **pending sentence**, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added).

Our review of the trial court's sentencing order on appeal reflects that the trial court granted Appellant credit for time served totaling twenty-nine days, starting on June 13, 2016, and ending on July 11, 2016. Order, 9/12/17, at 2. However, after his conviction on June 22, 2017, and until his sentencing on September 12, 2017, Appellant was in custody because the trial court revoked Appellant's bond at the end of his trial. N.T., 6/22/17, at 150. The trial court's sentencing order dated September 12, 2017, does not include credit for this period. Accordingly, we are constrained to vacate the judgment of sentence and remand this matter to the trial court to calculate accurately the credit for time that Appellant has served.

Convictions affirmed. Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/11/2019